# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK DANIEL REYNOLDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:12-cv-2643-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Mark Daniel Reynolds ("Reynolds") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Reynolds filed an application for Title XVI Supplemental Security Income on August 11, 2009, alleging a disability onset date of August 11,2009, due to Crohn's disease, sleep disorder, colitis, and panic attacks. (R. 28, 249). After the SSA denied Reynolds' claim, he requested a hearing before an ALJ. (R. 170-71).

The ALJ subsequently denied Reynolds' claim, (R. 25-36), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6).  Reynolds then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings

2

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

3

> (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to

---

[1]  This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Reynolds had not engaged in substantial gainful activity since August 11, 2009, and, therefore, met Step One.  (R. 30).  Next, the ALJ found that Reynolds satisfied Step Two because he suffered from the severe impairments of "[a]nxiety disorder, alcoholism, and ulcerative colitis."  *Id*.  The ALJ then proceeded to the next step and found that Reynolds failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Reynolds had the residual functional capacity (RFC) to

> perform light work as defined in 20 C.F.R. § 416.967(b) except he can remember, understand, and carryout simple instruction and would work best in a well spaced work environment.  Contact with the public should remain casual; criticism should be non-confrontational; and changes to the work setting should be introduced gradually.

(R. 33).  In light of his RFC, the ALJ held that Reynolds "is unable to perform any past relevant work."[2]  (R. 35).  Lastly, in Step Five, the ALJ considered Reynolds' age, education, work experience, and RFC and determined "there are jobs that exist in significant numbers in the national economy [Reynolds] can perform."  *Id.*

_____

[2]  As of the date of the ALJ's decision, Reynolds was 52 years old, and had past relevant heavy skilled work as a mobile home utility worker.  (R. 35, 139).

Therefore, the ALJ found that Reynolds "has not been under a disability, as defined in the Social Security Act, since August 11, 2009."  (R. 36).

## V.  Analysis

The court now turns to Reynolds' contentions that the ALJ (1) improperly discredited Reynolds' subjective testimony; (2) abused his discretion by engaging in settlement negotiations with Reynolds and became biased against Reynolds for declining to accept the ALJ's settlement proposal; (3) abused his discretion by refusing to allow Reynolds' counsel to cross-examine the medical expert; (4) failed to apply the correct legal standard on the issue of Reynolds' noncompliance with prescribed treatment; and (5) committed reversible error by failing to make credibility findings regarding the testimony of Reynolds' wife.  *See* doc. 9 at 12-24. The court addresses each contention in turn.

    A.    <u>Application of the Eleventh Circuit pain standard</u>

Reynolds contends the ALJ improperly discredited Reynolds' subjective pain testimony.  Doc. 9 at 12-17.  As mentioned in Section III, *supra*, the pain standard in this circuit requires a two part analysis.  In applying this standard, the ALJ found Reynolds met the first part because "the medical evidence establishes [Reynolds'] physical impairment."  (R. 34).  However, the ALJ found Reynolds did not meet the first prong[3] of the second part of the pain standard because "the

---

    [3]  *See Holt*, 921 F.2d at 1223 ("objective medical evidence that confirms the severity of the alleged pain arising from that condition").

medical evidence . . . does not support the frequency or severity of [his] symptoms as alleged." (R. 34). The ALJ also found that Reynolds did not meet the second prong[4] of the second part because the evidence does "not establish an underlying medical condition, which is of such severity that it can reasonably be expected to give rise to the symptoms alleged by the claimant." (R. 33).

Reynolds contends the ALJ erred because "ulcerative colitis is a medical condition which is capable of causing frequent bathroom breaks."[5] Doc. 9 at 14. To support this contention, Reynolds cites to the testimony of Dr. Joseph Rubini, the medical expert (ME) who testified at Reynolds' second ALJ hearing. At that hearing, Reynolds' attorney asked Dr. Rubini whether ulcerative colitis is capable of producing symptoms that would require multiple trips to the bathroom, and Dr. Rubini responded "yes." (R. 136). Unfortunately for Reynolds, the court simply cannot view Dr. Rubini's testimony in isolation. In that regard, the court notes that Dr. Rubini also testified that Reynolds' "colitis is not severe" because one of the medical records described Reynolds "as enjoying rock climbing[6] and I felt that

---

[4] *See Holt*, 921 F.2d at 1223 ("objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain").

[5] Reynolds testified that he had required 15 to 16 bathroom breaks prior to time of the hearing, which commenced at 8:43 a.m. (R. 52). His wife testified that on the average day Reynolds had to go to the bathroom at least 25 times a day. (R. 90).

[6] Reynolds later testified that it had been over a year since he had been rock climbing. (R. 154).

that's indicative or [sic] rather not a severe condition of his colitis and I noted that he didn't take anti-colitis medication and when he didn't take the medication he's more likely to have stools and bloody stools at that but he either couldn't afford it or didn't take it at times," (R. 122), that Reynolds' ulcerative colitis could be described as "recurrent," and "that at times [it is] severe and at other times less severe," (R. 123), and that he did not consider frequent bowel movements to be "a typical" or "classical symptom with people diagnosed with a history of ulcerative colitis," but that it is "with some people in particular and those people that are not taking any treatment for their condition." (R. 132). Based on this testimony, it is evident that Dr. Rubini's testimony is subject to a variety of interpretations. Significantly, such fact finding is within the province of the ALJ. *See Landry v. Heckler*, 728 F.2d 1551, 1554 (11th Cir. 1986) (reiterating that in determining whether a claimant's condition meets the pain standard, "choosing between conflicting evidence is a task particularly suited to the fact finder") (quoting *Hand*, 761 F.2d at 1549 n.6).

In explaining his findings, the ALJ noted that Dr. Rubini "testified that [Reynolds] had a history of ulcerative colitis with chronic alcoholism and drug seeking, . . . [and] opined that [Reynolds'] ulcerative colitis was not severe." (R. 34). The ALJ also noted that the consultative examination of Dr. Hirenkumar Jani on December 14, 2009, "was ostensibly normal, and [Reynolds'] ulcerative colitis was note[d] as in remission." (R. 34, 312-15). Indeed, Dr. Jani's report contains

no mention of frequent bowel movements, with the only reported symptoms being that "[c]urrently [Reynolds] is describing having abdominal pain, cramp[] like which is 5/10–increased by eating, decreased by medicine." (R. 312). The ALJ also found it significant that the "treating source records are devoid of any evidence of [Reynolds] having any flare up of his ulcerative colitis, during the relevant period," and that "the record contains only one medical treatment note [during that period], which was for a refill of [Reynolds'] anxiety medication and not related to his physical issue." (R. 34). In fact, this treatment note of December 10, 2009, from Dr. Henry Davis, mentions no complaints from Reynolds about colitis symptoms, and Dr. Davis diagnosed only a "[h]istory of ulcerative colitis, not presently seeing a GI specialist or on any medication." (R. 354). The ALJ also cited the lack of "independent supportive evidence of [Reynolds] having the frequency and severity of symptoms as alleged," and again noted that "in spite of not receiving ongoing medical treatment or prescribed medication, [Reynolds] has had no flare up related to his physical issue during the relevant period." (R. 34). Finally, in addition to relying on the absence of reports of disabling symptoms to treating or consultative examiners, the ALJ also observed that Dr. Jani "opined [Reynolds] could walk or stand at least six hours without any restriction and had no restrictions while sitting," and that Dr. Rubini testified Reynolds "has the physical capacity to perform light exertional activities." *Id.* Therefore, the ALJ concluded

that "[u]ltimately, the medical opinions contained within the record indicate that [Reynolds] can perform at least light exertional activity." *Id.*

Put simply, the ALJ weighed the evidence and found Reynolds did not have "an underlying medical condition, which is of such severity that it can reasonably be expected to give rise to the symptoms alleged by the claimant." (R. 34). While Reynolds is free to disagree with the ALJ, the court notes that the ALJ's determination that Reynolds does not meet the pain standard "is a question of fact, which . . . is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand*, 761 F.2d at 1549. Based on this record, the court finds that substantial evidence supports the ALJ's finding. Therefore, the ALJ did not err in finding Reynolds was not disabled due to his alleged symptoms.

B.    Abuse of discretion and bias

Reynolds contends next that because the ALJ offered to award Reynolds a closed period of benefits at the hearing, the ALJ "became a negotiator on behalf of the SSA as opposed to an impartial arbiter of the facts and, therefore, should have recused himself from further participation in the case." Doc. 9 at 18. The record shows that prior to taking testimony from a vocational expert [VE], the ALJ made the following offer to Reynolds:

> [O]ne thing I could do and it's not an ultimatum is before I ask our vocational expert what her, presenting hypotheticals, if you would be considering a closed period that would begin 12/22/09 and end 12/22/2010 and that would give him something, where it says he has no money to go to doctors or anything like that because there was a

> period of time, I think he couldn't work but I'm not sure.  But the
> alternative is if that doesn't seem, then I'll go to, I'll ask and that, it's
> no longer an option once we move on because I don't know what the
> vocational expert's going to say but before I go to the vocational
> expert and say, assuming a person got A, B, C and before you do it
> whether a, one year closed period would be acceptable to you and to
> him.  It's not an ultimatum. It's only an option.

(R. 143-44).  Reynolds' attorney responded that "the problem with that . . . is that

this man needs, he needs medical treatment in the future and you know, a closed

period is not going to help him getting his medicine, $ 400 a month or so, it's his

call to make but I certainly would not recommend him doing that simply because if

he needs his medicine that's not going to–"  (R. 144).  The record does not reflect

whether Reynolds or his attorney made a definitive decision on whether to accept

the offer at that time.  Following the VE's testimony, the ALJ revived his offer:

"And there's no way that you see a close[d] period would be a viable option in this

case."  (R. 157).  Reynolds' attorney responded:  "No, sir.  It's not going to help

him.  He can't get his medicine.  This guy is going to die if he doesn't get some

medicine."  *Id.*  After additional discussion of Reynolds' need for a colonoscopy,

Reynolds' attorney asked the ALJ "what's wrong with having an onset date of June

2010."  (R. 158).  The ALJ then extensively explained his reasons for offering a

closed period:

> I mean, I'm betwixt and between on this case.  I mean I heard the
> testimony of our vocational expert.  I heard the testimony of our
> medical expert.  I reviewed the two exhibits which say he can work.
> There's a lot of material that says he can do work but on the other
> side of the coin he does have an illness.  This is a very difficult case.

That's why I figured if we went with a closed period you would certainly have X amount of dollars to get whatever test he needs and then could always file again with your excellent representation. There's no time limit on that. . . . Okay, this is a Title XVI so he can't get any benefits prior to 2009 anyway but if he were to go to a closed period he could still file another Title XVI after he gets that money and he gets, I would definitely go again and it's more to give him, as you point out, the wherewithal to get the tests that he should have. I would go with a year and a half but I'd be like going against some testimony here to do it. But I, this is a difficult case. I do think he has a gastro, whether it is of such a nature that he can never work because of it, that I'm not convinced, I'm surely not convinced and the same thing with the mental disorder. I'm not convinced that it's so overwhelming that he can't handle that. Those are the two areas that I deal with and, so, but I haven't made any final decision. I have to go through the evidence again and I'll just weigh it and then come up with a decision but I do believe you have severe medically determinable impairments. Whether that means you could not work at any job I'm not sure. I don't know. I've got to listen to his testimony again and I've got to review the material and listen to our vocational expert but this is a very borderline type of case for me.

(R. 158-59). Although the transcript of the hearing does not reflect it, Reynolds again declined the ALJ's offer of a closed period of disability.[7]

Turning now to Reynolds' contention of bias against him due to his rejection of the offer, the court initially notes that a presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (finding that hearing officers who decide Part B Medicare claims "serve in a quasi-judicial capacity, similar in many

---

[7] In a brief to the Appeal Council, Reynolds' attorney confirms that Reynolds "informed [the ALJ] that he was unwilling to accept a closed period." (R. 294).

respects to that of administrative law judges," and are presumed to be unbiased). However, this presumption may be rebutted by showing a conflict of interest or some other specific reason for disqualification. *Id.* Under the regulations, an ALJ is disqualified from conducting a hearing "if he or she is prejudiced or partial with respect to any party." 20 C.F.R. § 404.940. Thus, Reynolds may overcome the presumption by showing that the ALJ was prejudiced against him.

Prejudice exists when an ALJ considers evidence outside the record in deciding a claimant's case. *See Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir. 1996). However, to constitute bias, the evidence "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also U.S. v. Amedeo* 487 F.3d 823, 828 (11th Cir. 2007) (same). Consequently, "[o]pinions formed on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Amedeo,* 487 F.3d at 829 (same). When the alleged bias does not stem from an extrajudicial source, it must be "so extreme as to display clear inability to render fair judgment." *Liteky,* 510 U.S. at 551.

Reynolds does not allege the ALJ considered evidence outside the record, or formed "an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Grinnell*, 384 U.S. at 583.  Reynolds has also not cited any authority to support his contention that it was improper for the ALJ to offer a closed period of disability.  On the other hand, the Commissioner cites to *D'Amato v. Apfel*, 2001 WL 776945 (S.D.N.Y. 2001), in which the court rejected a similar allegation of alleged bias related to an offer to settle the case:

> Indeed, the Second Circuit has recognized that the high standard of propriety applied to recusal motions for federal judges "cannot apply to administrative law judges who, after all, are employed by the agency whose actions they review." *Greenberg v. Bd. of Governors of Fed. Reserve Sys.,* 968 F.2d 164, 167 (2d Cir.1992).  Even applying the heightened standard to a federal district judge, the Second Circuit affirmed the denial of a recusal motion when Judge Baer "urged the parties to settle," and suggested that the plaintiff should consider his "prior remittur in assessing the wisdom of trying the case again." *Lightfoot v. Union Carbide Corp .,* 92 Civ. 6411, 1997 WL 543076, at *1 (S.D.N.Y. Sept. 4, 1997) *aff'd,* 175 F.3d 1008 (2d Cir. 1999). Although Judge Baer did not offer to settle the case himself, his strong recommendation that the case should be settled was not considered evidence of bias because there was no display of "deep seated favoritism or antagonism that would make fair judgement impossible." *Id.* at *2.  Similarly, ALJ Levin's offer to settle the case did not reveal any reason why he could not make a fair and impartial decision regarding Plaintiff's application.  Both the record of the second hearing and the resulting decision in this case further illustrate that ALJ Levin fully examined all of the evidence and reached a reasoned conclusion.

*Id.* at *6.  The court finds the reasoning expressed in *D'Amato* is persuasive, and concludes that the ALJ's offer of a closed period of disability, in and of itself, was not improper and is insufficient to establish bias.  Therefore, Reynolds must show

that the ALJ's bias was "so extreme as to display clear inability to render fair judgment." *Liteky,* 510 U.S. at 551.

Other than the making of the offer itself, Reynolds' only contention of bias is that the ALJ denied his claim "in retribution for [Reynolds'] failure to accept the ALJ's offers of a compromise settlement." Doc. 9 at 18. This argument is based on Reynolds' assertion that "[i]t is apparent that during the hearing, the ALJ was sufficiently satisfied of [Reynolds'] disability to offer him up to one and one-half years worth of benefits." *Id.* (emphasis removed). Unfortunately, contrary to Reynolds' contention, the hearing transcript shows that the ALJ was far from convinced that Reynolds was entitled to even a closed period of benefits. For example, the ALJ stated that "there was a period of time, I think he couldn't work *but I'm not sure*." (R. 143) (emphasis added). At a later point, the ALJ stated that he "heard the testimony of our medical expert" and "reviewed the two exhibits which say he can work," and that "[t]here's a lot of material that says he can do work." (R. 158). Further, the ALJ emphasized that he had not "made any final decision," and would "have to go through the evidence again and . . . weight it and then come up with a decision," (R. 159), and that he was "betwixt and between" on whether Reynolds was disabled. (R. 158). Therefore, the court finds no evidence to support Reynolds' contention that the ALJ was "satisfied of [Reynolds'] disability," but rendered an unfavorable decision "in retribution for [Reynolds'] failure to accept the ALJ's offers of a compromise settlement." Doc. 9 at 18.

16

Likewise, there is no evidence showing the ALJ exhibited bias "so extreme as to display clear inability to render fair judgment." *Liteky,* 510 U.S. at 551. Accordingly, Reynolds' contention is without merit.

      C.     <u>Refusal to allow cross-examination of the medical expert</u>

Reynolds contends next that the ALJ abused his discretion by refusing to allow his attorney to question Dr. Rubini about the impact of chronic anxiety on Reynolds' gastrointestinal condition.  Doc. 9 at 20.  The SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) provides that "the claimant and the representative have the right to question the ME fully on any pertinent matter within the ME's area of expertise," but that "the ALJ will determine when they may exercise this right and whether questions asked or answers given are appropriate." HALLEX I-2-6-70, 1993 WL 751901 (S.S.A.).  The manual also provides that "[t]he ALJ will not permit the ME to respond to questions on nonmedical matters or to draw conclusions not within the ME's province." *Id.*  Reynolds asserts that it was within Dr. Rubini's area of expertise to answer "questions about the effects, if any," the diagnoses of chronic anxiety and depression "would have on [Reynolds'] gastrointestinal symptoms." Doc. 9 at 21.  However, a review of the transcript of the hearing shows the ALJ did not abuse his discretion in refusing to allow Dr. Rubini to testify on a subject outside Dr. Rubini's expertise.

At the second ALJ hearing, Reynolds' attorney asked Dr. Rubini whether he was familiar with global assessment of functioning (GAF) scores,[8] and Dr. Rubini responded: "Well, I'm not too swift on that. I can imagine it but I'm not going to be expert in that area." (R. 134). Reynolds' attorney also asked Dr. Rubini the following question: "And, you're not prepared to give any testimony about the severity of the chronic anxiety, depression, post traumatic stress disorder. Is that correct?" *Id.* Dr. Rubini responded: "That's correct." *Id.* After the ALJ reiterated that Dr. Rubini was "only going to deal with the physical not the behavioral or mental or mood disorders," Reynolds' attorney continued his questioning:

> Q:    Okay, well, then let me ask another way. Doctor, in your experience as an internal medicine doctor are you aware as to whether or not psychological factors can have a physical affect [sic] such as those similar to ulcerative colitis?
>
> ME:   Am I aware that psychological factors, what about psychological factors?
>
> Q:    Can they impact conditions such as ulcerative colitis?
>
> ME:   Psychological conditions impact everyone whether they have any conditions at all. We don't live in a vacuum. I don't understand what you're saying.
>
> Q:    I guess, the symptoms of ulcerative colitis, can they be exacerbated–

---

[8] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th Edition).

ALJ:   I'm not allowing that.

(R. 135).  This testimony shows that Dr. Rubini, who is a board certified specialist

in internal medicine, (R. 118), was not prepared to testify as an expert about

Reynolds' mental conditions, and apparently did not understand the purpose of the

questions posed by plaintiff's attorney.  At the first hearing, the ALJ indicated he

wanted to have a medical expert examine the record and give "an opinion exactly

what gastrointestinal disease" Reynolds had.  (R. 62).  Considering Dr. Rubini's

specialty and the purpose for his testimony, the court finds no abuse of discretion

by the ALJ.

D.    Reynolds' noncompliance with prescribed treatment

Relying on *Dawkins v. Bowen*, 484 F.2d 1211 (11th Cir.1988), Reynolds

next contends "[i]t was reversible error for the ALJ to base his decision, in part, on

the fact that [Reynolds] was not taking any prescribed medicine or receiving

treatment for his condition."  Doc. 9 at 23.  Reynolds' reliance on *Dawkins* is

misplaced because the case involved an ALJ's decision that found the claimant's

impairments were "amenable to adequate control" with medications.  *Id.* at 1213.

As a result, the court was applying a regulation that currently requires a claimant to

"follow treatment prescribed by [his] physician if this treatment can restore [the

claimant's] ability to work."  20 C.F.R. § 416.930.  In contrast, the ALJ here did

not deny benefits because prescribed treatment would restore Reynolds' ability to

work.  In fact, the ALJ observed that "in spite of not receiving treatment or

prescribed medication, [Reynolds] has had no flare up related to his physical issue during the relevant period."  (R. 34).  In other words, the ALJ found that Reynolds' condition was not disabling even without treatment.

The ALJ's only other reference to Reynolds' lack of treatment was his observation that "the records relate that [Reynolds] was not taking any prescribed medication or receiving treatment for his condition," and that "[w]hile [Reynolds] alleged this was due to financial reasons, the mental health records note that [Reynolds] was purchasing medications from friends."  (R. 34).  In that respect, the matter before the court is more akin to *Ellison v. Barnhart*, in which the ALJ's disability determination "was not significantly based on a finding of noncompliance."  335 F.3d 1272, 1275 (11th Cir. 2003).  In *Ellison*, this factor alone was sufficient for the court to find no reversible error even though the ALJ failed to consider the claimant's ability to afford the treatment.  *Id.*  Here, when the ALJ's decision is considered as a whole, it is clear that Reynolds' failure to pursue treatment was not a significant factor in his decision.  Therefore, consistent with *Ellison*, the court finds no reversible error in the ALJ's consideration of Reynolds failure to receive treatment for his conditions.

> E.    The failure to make credibility findings regarding the testimony of Reynolds' wife

Reynolds' final contention of error is that the "ALJ was required to summarize the testimony of [Reynolds'] wife and to make specific credibility

findings regarding her testimony." Doc. 9 at 24. Unfortunately for Reynolds, the ALJ found he did not meet the Eleventh Circuit pain standard. As a result, Reynolds cannot be found disabled based on subjective complaints of pain. *See Landry v. Heckler*, 728 F.2d 1551, 1553 (11th Cir. 1986) (recognizing that the Eleventh Circuit pain standard reflects the requirements of the Social Security Disability Reform Act of 1984, and abrogated prior cases that allowed a finding of disability based on subjective complaints alone). Therefore, the testimony of Reynolds' wife as to the extent of his symptoms was irrelevant. *Id.* at 1554. Accordingly, the ALJ did not err in failing to make credibility findings regarding the testimony of Reynolds' wife.

### VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Reynolds is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

DONE this 2nd day of July, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE